UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARIQ GHAZNAVI,

    Plaintiff,

v.                                                            Case No: 8:14-cv-755-T-33AEP

CIRCLE K STORES, INC.

    Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 3.01 and the Court's Case Management and Scheduling Order dated May 23, 2014 (Doc. 7), Defendant Circle K Stores Inc. ("Circle K") replies to Plaintiff's Response in Opposition to Summary Judgment (Doc. 48) and states as follows:

**I.    Introduction and Background**

Plaintiff alleges that Circle K discriminated against him on the basis of his race and national origin and subjected him to three adverse employment actions: (1) demotion to Market Manager Trainee (Doc. 1, ¶13); (2) demotion to Store Manager (Doc. 1, ¶14) (collectively, "demotions"); and (3) termination (Doc. 1, ¶29).[1]

In its Motion for Summary Judgment (Doc. 31), Circle K proffered a legitimate non-discriminatory reason for each employment action. As a result, Plaintiff bears the burden of establishing that each of Circle K's proffered reasons are a pretext for discrimination. See Guimaraes v. NORS, 366 F. App'x 51, 54 (11th Cir. 2010).[2]

---

[1] Plaintiff has dismissed his age discrimination claims. (Doc. 46)
[2] For purposes of this Reply, Circle K will assume that Plaintiff has established a prima facie case of discrimination.

{BC00064618:1}                        1

As discussed below, Plaintiff's conclusory allegations, speculation, improbable inferences and unsubstantiated assertions are insufficient to establish pretext in order to defeat summary judgment.[3]

## II. Plaintiff Fails to Demonstrate Pretext Because he Fails to Show that Circle K's Proffered Reasons for Employment Decisions were Untrue and Motivated by Race or National Origin

To demonstrate pretext, a plaintiff must show "that the proffered reason was not the true reason for the employment decision <u>and</u> that race was." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993) (emphasis supplied). A showing of pretext requires "concrete evidence in the form of specific facts." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Tolley v. United Parcel Serv., No. Civ.A.1:05CV606TWT, 2006 WL 486523, at *5 (N.D. Ga. Feb. 27, 2006). Evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005).

Further, a plaintiff must prove that his race and national origin played a role in his employer's decision making process and had a determinative influence on the outcome. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (emphasis supplied). A plaintiff cannot establish pretext by citing facts that merely suggest discriminatory animus, "but must specifically respond to each of the employer's explanations and rebut them." Rowell v. Metro. Life Ins. Co., No. Civ.A.1:12CV0491WSDRGV, 2013 LEXIS 164540, at *47-48 (N.D. Ga. Oct. 9, 2013).

---

[3] "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

Identifying discriminatory remarks that are far removed in time from an adverse employment action is insufficient to show that the employment decision was motivated by race or national origin. See Id. at *51, citing Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002) (affirming summary judgment for employer on discrimination claims).

Here, Plaintiff has not met his burden to demonstrate pretext because he fails to show concrete evidence that (a) Circle K's proffered reason for termination was untrue, (b) Circle K's proffered reasons for demotion were untrue, and (c) Circle K's decisions were influenced by race.[4]

### A. Circle K's Reason for Terminating Plaintiff is Worthy of Credence

Circle K terminated Plaintiff for a nondiscriminatory reason—leaving cash unattended. Plaintiff does not dispute the nature of the misconduct, or that he violated Circle K policy. (Doc. 39-1, p. 212: 1-11). Instead, Plaintiff attempts to demonstrate that Circle K's reason is not worthy of credence by identifying alleged comparators who were treated more leniently.

Plaintiff represents "that forty-nine (49) managers in Thompson's region have been written up for cash handling violations during 2012-14 but not discharged." (Doc. 48, p. 21) Plaintiff attaches forty-nine Counseling Notices (Doc. 48-3), and highlights four managers who left cash unattended but were not discharged. (Doc. 48, p. 21) Plaintiff states that "Defendant's

---

[4] Plaintiff cites additional cases for the proposition that a plaintiff may escape summary judgment by showing a "convincing mosaic of circumstantial evidence" of discrimination. (Doc. 48, p. 22-23). Importantly, the "convincing evidence" must relate specifically to discriminatory intent. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). Moreover, the cases applying this standard generally lack comparators and find serious evidence of discrimination. See id. (employer made termination decisions based on matrix which included employees' races); King v. Volunteers of Am., N. Ala., Inc., 502 Fed. App'x. 823 (11th Cir. 2012)(outrageous, daily statements derogating African-American employees); Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249 (11th Cir. 2012)(admission that pregnancy was motivating factor in employment decision); Jackson v. Checkers Drive-In Rests., Inc., Case No. 8:10-cv-1483-T-26TBM, 2011 WL 3171812 (M.D. Fla. Jul. 27, 2011)(pervasive use of "n-word" and mandate to hire more white people).

failure to discharge these numerous employees for leaving cash unattended is powerful evidence that its proffered reasons for discharging Ghaznavi was a pretext for discrimination." Id.

However, this factual predicate for Plaintiff's pretext argument is based on a complete misrepresentation of the record. ***Only seven of the employees identified in the Counseling Notices were employed in Thompson's region. (See Ex. A, ¶8)***[5] ***Of those, only Charalotta Naeimi-Hossany committed a violation related to leaving cash unattended.***[6] None of the four employees highlighted in bullet points on page 21 of Plaintiff's Response (Bessie Ann Turk, Carolyn Kindle, William Andrews, and Barbara McCabe) were employed in Thompson's region. (Exh. A, ¶9). Finally, as is evident from the Counseling Notices themselves, most of the employees identified in the Notices were not counseled for leaving cash unattended. [7]

Plaintiff should be well aware that the Counseling Notices are not all related to employees from Thompson's region. The Notices were produced after Plaintiff filed a Motion to Compel affirmatively seeking records from the entire Florida Division (not just Thompson's Region) reflecting violations of all Circle K cash handling procedures. (Doc. 24, p. 4-7). The Court entered an order requiring production of the documents. (Doc. 28) The Court did not limit the production to Thompson's region or the specific cash handling violation of leaving cash unattended (Doc. 28, ¶1.b).[8] Accordingly, Circle K produced records for the entire Florida Division (not just Thompson's Region) and related to all cash handling procedures (not just

---

[5] Circle K has filed the Declaration of Christie O'Halloran as Exhibit A to this Reply.
[6] The specific circumstances regarding Charalotta Naeimi-Hossany are set forth in Defendant's Motion for Summary Judgment. (Doc. 31, p. 10). The circumstances for which the other six employees who were employed in Thompson's region are described in the Counseling Notices themselves: Deborah Harvey (Doc. 48-3, p. 40), Casey Sheree Doyen (Doc. 48-3, p. 38), Sheenica Cotton (Doc. 48-3, p. 33), Tracey Smewing (Doc. 48-3, p. 20), Jean Lauture (Doc.48-3, p. 16), and Adrienne Gonzalez (Doc. 48-3, p. 17); none committed violations related to leaving cash unattended.
[7] As set forth in Circle K's Motion for Summary Judgment, there are a number of issues which fall under the Circle K disciplinary codes relating to cash handling procedures, one of which is leaving cash unattended. (Doc. 31, p. 9, n. 16)
[8] The Court did limit the production of other categories of information to Thompson's region. (Doc. 28, ¶1.a) (related to "other" EEOC charges and litigation).

leaving cash unattended). (Exh. A, ¶7) Finally, Thompson's name does not appear on any of the Counseling Notices related to the employees who were not in her region.

Plaintiff's factual predicate is a nullity. The Counseling Notices are not "powerful evidence" of pretext. Rather, they are an example of Plaintiff's willingness to mischaracterize evidence in order to hide the glaring weakness of his case – he has no evidence that Circle K's proffered reason for termination was untrue.

In order to determine whether Plaintiff was treated differently than similarly situated employees, the comparators used must be similarly situated in "all relevant aspects" and the quantity and quality of the comparators' misconduct must be "nearly identical" to Plaintiff's misconduct. See Foster v. Biolife Plasma Servs., 566 F. App'x 808, 811 (11th Cir. 2014). Plaintiff alleges that only Thompson displayed racial animus and that her termination decision was motivated by her discriminatory intent. Accordingly, employees disciplined by any supervisor other than Thompson or employees disciplined for any cash handling violations other than leaving cash unattended are not similarly situated. Id.; Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989); Thomas v. Dep't of Corrs. of State of Ga., 377 F. App'x 873, 880 (11th Cir. 2010) (holding that disciplinary measure undertaken by different supervisors may not be comparable for purposes of Title VII because the fact that different supervisors addressed instances of misconduct may explain a difference in the means of discipline employed to address the misconduct).

Thompson's testimony and Circle K's Termination Notices identify the relevant comparators. At her deposition, Thompson recalled two employees (in addition to Plaintiff) who were terminated for leaving cash unattended. Thompson immediately terminated Myra Alton after learning she left cash unattended. (Doc. 38-1, p. 31:3-25). Although Connie Wright had

left cash unattended on previous occasions, Thompson terminated Wright on the first occasion Thompson discovered the violation. (Doc. 38-1, p. 145:25 – 147:3) As set forth in the Motion for Summary Judgment, Charalotta Naeimi-Hossany's violation presented a unique set of facts; she is not a true comparator. (Doc. 31, p. 10).[9]

Circle K produced Termination Notices identifying additional employees in Thompson's region who were terminated for leaving cash unattended: (1) Elissa Busch (Doc. 32-3, p. 10); (2) Deloris Herndon (Doc. 32-3, p. 13); and (3) Jason Betsinger (Doc. 32-3, p. 30). Based on the undisputed record, Thompson terminated 5 out of 6 employees who left cash unattended.[10] Thompson's conduct was consistent.

Plaintiff also attempts to show pretext by pointing to various performance issues that occurred during the course of Plaintiff's employment with Circle K. (Doc. 48, p. 22).[11] However, evidence related to Plaintiff's performance does nothing to contradict Circle K's proffered termination reason because Circle K did not terminate Plaintiff based on performance. In fact, Circle K has never suggested that Plaintiff's poor performance led to his discharge. Therefore, the evidence cannot possibly be used to rebut Circle K's reason for termination.

**B. Circle K's Reasons for Demoting Plaintiff are Worthy of Credence**

As described in the Motion for Summary Judgment, Circle K demoted Plaintiff because he was not performing at the level expected of a market manager. Plaintiff suggests Circle K's reasons are unworthy of credence based on anecdotal evidence that Plaintiff was a "good guy",

---

[9] Naeimi-Hossany died approximately four to five months after her violation. (Doc.38-1, p. 145: 15-18)

[10] As set forth in Circle K's Motion for Summary Judgment, if the Court considers the Florida Division employees as comparators, the evidence shows that Circle K terminated the vast majority of employees who left cash unattended. (Doc. 31, p.9, n. 16).

[11] Plaintiff also complains about the installation of a video camera in the store office, notwithstanding that all convenience store offices have (or should have) video surveillance. (*See* Doc. 31, p. 7-8)

and did some things well, sometimes. However, there is no evidence that Circle K's bases for demotion were untrue, or that the demotions were based on racial animus.

As set forth above, Thompson is the only Circle K manager accused of any racial bias. However, other Circle K managers independently concurred with Thompson's assessment and documented issues. Issues with the Plaintiff's performance are documented in emails by Yvonne Ott, Training Manager for the Florida Division. (Doc. 32-2, p. 2-22)[12] Acting Market Manager, Tammy Craft documented numerous deficiencies. (Doc. 32-2, p. 20, 32, 33, 34, 35-36, 42-45, 53) O'Halloran personally visited and reviewed the total performance of Plaintiff's store along with Regional Operations Director ("ROD") Jason Broussard, and found that the store was not up to standards. (Doc. 37-1, 28:4 – 29:16) Finally, Plaintiff's original ROD, John Venutti, told O'Halloran that Plaintiff was struggling with Circle K training and declined to sign off on Plaintiff's Training Book.[13] None of these individuals have been accused of being racist, or having any discriminatory motive or intent.

Taking this record in the light most favorable to Plaintiff, no reasonable fact-finder could conclude that Circle K's reasons for the demotions were untrue, or that they were based on racial animus. Moreover, the Court's inquiry is whether the company's perception of Plaintiff's performance was the real reason for termination. Laxton v. Gap, Inc., 333 F.3d 572 (5th Cir. 2003). It is not whether Circle K's proffered reason was an *incorrect reason*. Id. The Court's concern is whether the evidence supports an inference that Circle K intentionally discriminated against the Plaintiff, an inference that can only be drawn if its proffered reason was not the real

---

[12] *See* Circle K's Motion for Summary Judgment (Doc. 31, P. 3-4)
[13] Likewise, a few positive reports and the testimony of Plaintiff's subordinates and other store managers do not establish that Plaintiff was ready to run a Circle K Market. Plaintiff relies on Linda Whitaker, who had a positive view of Plaintiff's performance (although Whitaker only worked with Plaintiff for a few weeks). (Doc. 35-1) On the other hand, Margi Chapman, who worked with Plaintiff for the entire time he was a store manager, had a very negative assessment of Plaintiff. (Doc. 40-1).

reason for discharge. Id. To survive Circle K's Motion, Plaintiff must produce evidence permitting the jury to disbelieve that Circle K's proffered reason was its true motivation. Id. Plaintiff's evidence simply does not cast doubt on the company's justification for demoting Plaintiff.

**C. The Record Does Not Establish that Circle K's Decisions were Motivated by Discriminatory Animus**

Plaintiff's only evidence of racial animus is two statements attributed to Thompson. In addition to being far removed in time from any adverse employment action, neither comment relates to employment decisions. See Suncoast Bev., 295 F.3d at 1229 ("Although a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext.")(emphasis in original, internal citation omitted).

During Thompson's first encounter with Plaintiff, in December 2012 and nearly five months before the termination, Thompson told Plaintiff about an encounter she had with a vendor of Pakistani decent. Plaintiff testified that Thompson stated she did not like Pakistanis. The second statement is attributed to Thompson by Arnold Wolberg. Wolberg claims that, on one occassion, Thompson addressed Plaintiff as "hey Paki". (Doc. 48-1, ¶7).[14]

*Wolberg's statement was discovered for the first time when his Affidavit was filed by Plaintiff in opposition to summary judgment.* (Doc. 48-1, p. 1-2) However, at his deposition, Wolberg testified that he told Plaintiff about the "hey Paki" statement approximately one year ago during a phone call when Plaintiff informed Wolberg that Plaintiff had filed this lawsuit. (Exh. B, p. 16: 1-3 – 25:1-10; p. 26: 9-21). Yet, the statement is not addressed in Plaintiff's

---

[14] Wolberg testified that he heard the statement in December. (Exh. B, p. 33: 19 – 34:14) This could only be December 2012, as Plaintiff was terminated within one year of his initial employment. Wolberg's deposition transcript is Exhibit B to this Reply.

deposition testimony, his interrogatory answers or at any other point in this litigation.[15] Moreover, Wolberg testified that he did not mention the "hey Paki" statement to Plaintiff earlier, including on telephone calls in which Plaintiff's demotions and terminations were discussed because "it had nothing to do with anything." Id. at p. 38:2-19. In fact, until Plaintiff informed Wolberg of the lawsuit, he never mentioned anything to Wolberg about discrimination or racism. Id. at p. 19:1-16p. 24:18-25.

Wolberg's testimony raises another credibility issue. Plaintiff testified that he "told [Wolberg] immediately on the same day" about Thompson's alleged comment that she did not like Pakistanis. (Doc. 39-1, p. 106: 5-24) Yet, Wolberg was unequivocal that Plaintiff never told him about the incident or alleged comments. (Exh. B, p. 36: 22-25 (Q: …did Mr. Ghaznavi ever tell you that Becky Thompson told Mr. Ghaznavi that Becky Thompson didn't like Pakistani people? A: No, never.); p. 37: 1-7 (Q: And is that true up through today? A: That is true up until today, yes. You [counsel] are the first to utter those words. Q: Did Mr. Ghaz[navi] ever tell you that Becky Thompson told Mr. Ghaznavi that Becky Thompson had a bad incident with a Pakistani person? A: Never).

As set forth above, both incidents occurred in December, 2012. Plaintiff was demoted to Market Manager Trainee in February 2013 and to store manager about ten weeks later. Plaintiff was terminated on May 3, 2013, nearly five months after the two alleged comments.

Even reading the record in the light most favorable to Plaintiff, the evidence establishes that Circle K's employment decisions were the result of Plaintiff's substandard performance and violation of Circle K policy (leaving cash unattended) and were not motivated by discriminatory animus. There is no nexus between the two alleged discriminatory comments and the adverse

---

[15] Plaintiff's deposition was taken and his interrogatories verified **after** Plaintiff discovered this "evidence". If Plaintiff knew about the "hey Paki" statement and failed to disclose it in discovery, he committed a discovery violation worthy of sanctions.

employment decisions. Moreover, the comments occurred well before Plaintiff's demotions and termination. As a result, the comments cannot form the basis of pretext sufficient to withstand summary judgment. See Suncoast Bev., 295 F.3d at 1229 ("Although a comment unrelated to a termination decision may contribute to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext.") (emphasis in original, internal citation omitted).

## III. Conclusion

Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact as to whether Circle K's articulated reasons for demoting, and then terminating, Plaintiff were pretextual. Moreover, Plaintiff has failed to put forth any evidence that the adverse employment actions were predicated on any discriminatory animus. See Suncoast Bev., 295 F.3d at 1223; See also Mickey v. Texas Cooperative Extension, 265 Fed.Appx. 177 (5th Cir. 2008).

The Court should grant summary judgment in favor of Circle K.

/s/ V. Stephen Cohen
V. Stephen Cohen, FBN 0948756
Email: scohen@bajocuva.com
Brad F. Barrios – FBN 0035293
E-mail: brad.barrios@bajocuva.com
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
Telephone: (813) 443-2199
Facsimile: (813) 443-2193
*Attorneys for Circle K Stores, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 16, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send a notice of electronically.

I further certify that I will mail the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

/s/ V. Stephen Cohen\_\_
Attorney